STEPHEN J. SIMONI
StephenSimoniLAW@Gmail.com
**SIMONI CONSUMERS
CLASS ACTION LAW OFFICES**
c/o Jardim Meisner Salmon
Sprague & Susser, P.C.
30B Vreeland Road, Ste. 100
Florham Park, NJ 07932
Telephone: (917) 621-5795

*Counsel for Plaintiff
and the Proposed Class*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| JOHN SACCHI ("**Consumer**"), Individually and on behalf of all others similarly situated, | : | **ELECTRONICALLY FILED** |
| Plaintiff, | : | Hon. ________________ |
| vs. | : | No. 26-cv-1755 |
| AARP ("**AARP**"), UNITEDHEALTHCARE INSURANCE COMPANY ("**United**"), and DOES 1 through 10, inclusive, | : | **CIVIL ACTION** **CLASS ACTION COMPLAINT** FOR INJUNCTIVE RELIEF AND COMPENSATORY AND PUNITIVE DAMAGES |
| Defendants. | : | **JURY TRIAL DEMANDED** |

**AARP AND UNITED FRAUDULENTLY SOLICIT PAID AARP MEMBERSHIPS AND "AARP MEDICARE SUPPLEMENT PLANS FROM UNITEDHEALTHCARE" POLICIES THAT PROMISE TO PAY FOR "MEDICALLY NECESSARY" CARE NOT PAID BY MEDICARE WHILE INTENDING TO DENY COUNTLESS SUCH CLAIMS FOR REIMBURSEMENT BY CITING A PHANTOM NON-EXISTENT CONDITION THAT APPEARS *NOWHERE* IN THE INSURANCE CERTIFICATE**

1. For the past several decades and continuing to the present, defendants AARP and UnitedHealthcare Insurance Company (“**United**”), as agents of, and co-venturers, partners, and joint tortfeasors with, each other (together, "**Defendants**” or “**Companies**”), have violated and continue to violate, *inter alia*, the New Jersey Consumer Fraud Act (“**NJCFA**”) by fraudulently soliciting and breaching paid sales and renewals of AARP memberships and the self-titled “AARP Medicare Supplement Plans from UnitedHealthcare” insurance policies administered by United.

2. The subject insurance policies are also commonly and alternatively referred to as “Medicare Supplement,” “Medicare-Gap,” and “Medi-Gap” plans because they promise to pay for medically necessary healthcare for which Medicare does not pay.

3. AARP colludes with United by soliciting sales and renewals of AARP memberships and the insurance policies that are administered by United—***for which sales AARP receives royalty fees***—while AARP and United are fully aware that (i) United has violated for decades the subject promises to pay for medically necessary healthcare not paid by Medicare and (ii) United in fact intends to continue systematically deny countless such claims by citing a phantom, non-existent condition that appears nowhere in the policies’ subject Certificate of Insurance, i.e., that the healthcare provider must participate in Medicare.

4. And then United proceeds to wrongly and systematically deny those claims on that legally invalid

ground in accordance with its practice of the past several decades.

5. But AARP continues to the date of filing to "endorse" the subject policies and receive royalty fees from the sales of its endorsed policies despite actual and constructive knowledge that United wrongfully and systemically denied, and continues to intend to deny, and continues to deny, proper insurance claims by purporting to cite non-existent "phantom" conditions that appear nowhere in the policies' Certificate of Insurance.

6. AARP explicitly advertises that the subject "AARP Medicare Supplement Plans that carry the AARP name are the only plans of their kind endorsed by AARP." AARP assures prospective and current members and insureds, *inter alia*, that "[t]hese plans meet the high service and quality standards set by AARP for its members."

7. AARP assures prospective and current members and insureds, *inter alia*, that "services that carry the AARP name have been carefully evaluated and selected as meeting the high service and quality standards of AARP. AARP cares about people and treats them with compassion."

8. AARP mandates that only AARP members may "enroll in an AARP Medicare Supplement Plan."

9. AARP also solicits sales and renewals of AARP paid memberships by noting that only AARP members may "enroll in an AARP Medicare Supplement Plan."

10. United systematically denies countless claims purportedly based on the noted "phantom," non-existent

condition in the Certificate of Insurance, which is apparently identical throughout New Jersey and the United States.

11. As detailed herein, multiple United workers—as agents of, and in coordination with United's co-venturer, partner, and joint tortfeasor, AARP—repeatedly denied multiple requests for reimbursement of a "medically necessary" surgical procedure by plaintiff John Sacchi ("**Consumer,**" "**Plaintiff,**" or "**Mr. Sacchi**"), a Senior Citizen stroke survivor, whom AARP and United had together fraudulently solicited (i) to purchase an AARP membership; (ii) to continually renew over decades the AARP membership annually thereafter; (iii) to purchase the subject AARP-endorsed insurance policy in 2014; and (iv) to execute a replacement policy annually thereafter through the present.

**AFTER MR. SACCHI WAS FORCED TO OBTAIN AN ATTORNEY TO PURSUE HIS RIGHTFUL REIMBURSEMENT, UNITED CONTINUED TO REFUSE PAYMENT AND COMMITTED ADDITIONAL VIOLATIONS OF THE N.J. CONSUMER FRAUD ACT BY *MISQUOTING PURPORTED CONTRACTUAL LANGUAGE* IN THE CERTIFICATE OF INSURANCE TO MR. SACCHI, WHICH ACTIONS AARP RATIFIED BY CONTINUING ITS ENDORSEMENT**

12. Mr. Sacchi was forced to obtain an attorney in his attempt for justice on his individual case in the Special Civil Part of the Superior Court of New Jersey,[1] but United committed additional egregious violations of the New Jersey Consumer Fraud Act by continuing to refuse

[1] Sacchi v. UnitedHealthcare Ins. Co., N.J. Superior (Monmouth County Special Civil Div.) MON-DC-2405-25. Pursuant to an agreement among the Parties, that action was dismissed without prejudice in contemplation of a global action subsequently being filed against both United and AARP, which the instant filing hereby constitutes.

reimbursement and ***misquoting purported contractual language*** in the Certificate of Insurance to Mr. Sacchi.

13. AARP then ratified United's wrongful behavior by, *inter alia*, continuing to "endorse" the subject policies, continuing to receive royalty payments for the subject policies, and taking no action to ensure that United's administration of the policies "meet[s] the high service and quality standards set by AARP for its members," which—at a bare minimum—encompass approving claims ***in accordance with the policies' Certificate of Insurance***.

**NEW JERSEY'S CONSUMER FRAUD ACT PROVIDES FOR TREBLE DAMAGES, ATTORNEYS' FEES, AND MULTIPLE PENALTIES OF $30,000.00 FOR EACH VIOLATION**

14. Fortunately, the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2.2 et seq. ("**NJCFA**")) provides for, *inter alia*, treble damages, attorneys' fees, penalties of $10,000.00 for the first violation and $20,000.00 for the second and every subsequent violation, and *enhanced damages for violations perpetrated against Senior Citizens and/or persons suffering from a disability including a $30,000.00 penalty for a scheme perpetrated against such vulnerable consumers*. Consumer is a Senior Citizen and receives medical care following his cerebral vascular accident, or "stroke," which he suffered I 2011 prior to all of the facts detailed herein.

15. All prospective Class Members, by virtue of their Medicare coverage, are either more than 64 years old and/or disabled (aside from a tiny fraction who

suffer solely end-stage renal disease and may therefore not be deemed disabled).

16. AARP and United have apparently perpetrated their illegal company-wide policies of fraudulently soliciting AARP memberships and insurance policy sales and refusing rightful reimbursements against countless thousands of consumers throughout New Jersey and the United States as it apparently utilizes an identical Certificate of Insurance for its "AARP Medicare Supplement Plans from UnitedHealthcare" insurance policies throughout the United States. AARP and United, moreover, profess to sell more such policies together than any other insurer.

17. Consumer, individually and on behalf of the Class defined below, brings this action for damages, restitution, statutory damages, punitive damages, treble damages, sanctions, interest, court costs, attorneys' fees, and injunctive relief for AARP's and United's continuing wrongdoing. Plaintiff demands a trial by jury, and complains and alleges as follows:

## FACTS

18. Defendant AARP ("**AARP**") is a corporation incorporated and headquartered in Washington, D.C. and UnitedHealthcare Insurance Company ("**United**") is a corporation incorporated in Connecticut and headquartered in Minnesota.

19. AARP and United solicit sales and renewals of AARP memberships and AARP Medicare Supplement Plans from

UnitedHealthcare insurance policies throughout the United States.

20. Consumer, a Senior Citizen stroke survivor, purchased an AARP Medicare Supplement policy in 2014 (which Mr. Sacchi has renewed annually thereafter to the present) in Monmouth County, New Jersey in reliance on, *inter alia*, AARP's endorsement of United's written representations that it would pay for medically necessary healthcare for which Medicare would not pay as memorialized in the subject Certificate of Insurance.

21. Defendants made, and continue to make ***after*** the filing of earlier litigation that cited the Defendants' same wrongful activity, written endorsements and representations in its advertisements to solicit sales and renewals of AARP memberships and AARP Medicare Supplement Plan insurance policies that include, *inter alia*, assurances that prospective and current insureds can:

**See any doctor without getting a referral.**

See, e.g., Internet advertisement that appeared on Facebook months ***after*** the earlier individual-plaintiff litigation referenced *supra* note 1 was filed. (**Attached as Exhibit A** (emphasis added)).

22. The policies' Certificate of Insurance constitutes a contract of adhesion to be construed strictly against its drafters in accordance with the doctrine of

*contra proferentem and* likewise promised to pay for any medically necessary healthcare for which Medicare would not pay.

23. But AARP and United actually intended to deny countless claims by purporting to cite a "phantom," non-existent condition in the Certificate of Insurance as they have done for decades with the active and constructive knowledge of each other. Defendants frivolously contend that the "phantom" condition, while nowhere stated in the Certificate of Insurance, somehow requires the healthcare provider to participate in Medicare or accept Medicare as payment in order for reimbursement to be made. That assertion by AARP and United is entirely false, but is nonetheless systematically invoked by Defendants to wrongfully deny countless claims for medically necessary healthcare.

24. In 2024, Consumer underwent a Mohs procedure to remove cancerous tissue from his eyelid and then underwent a surgical procedure to repair his eyelid, which cost a total of $7,875.00 in addition to post-operative care in November 2025 that cost $200.00 more.

25. It is well understood that both Medicare and the AARP Medicare Supplement Plans deny payment for elective cosmetic surgery including rhytidectomies and rhinoplasties ("face lifts" and "nose jobs," respectively) that are done solely to enhance one's appearance and therefore are *not* medically necessary. But Consumer's surgical repair of his eyelid after a Mohs procedure that removed cancerous tissue

therefrom absolutely constitutes "medically necessary"—and perhaps vision-saving and life-saving—care that is encompassed by any plausible definition of that term.

26. An AARP customer service representative assured Consumer in a recorded telephone call that his claim would be covered.

27. Although the surgical repair of his eyelid was medically necessary, United refused to reimburse him by purporting to cite the "phantom," non-existent condition that appears nowhere in the Certificate Of Insurance, i.e., the healthcare provider must participate in Medicare.

28. United's fraudulent assertion is further belied by the specific contents of the Certificate of Insurance that explicitly ***do*** provide coverage for medically-necessary healthcare provided outside the United States—where, presumably, few, if any, healthcare providers participate in the United States Medicare program.

29. Only *after* earlier related litigation had been filed in 2025,[2] AARP sent electronic mail communications to policy holders contending ***for the first time*** that the policies only covered medically necessary services if "Medicare is accepted by your provider." But the

[2] Sacchi v. UnitedHealthcare Ins. Co., N.J. Superior (Monmouth County Special Civil Div.) MON-DC-2405-25. Pursuant to an agreement among the Parties, that action was dismissed without prejudice in contemplation of a global action subsequently being filed against both United and AARP, which the instant filing hereby constitutes. *Supra* note 1.

Certificate of Insurance continues to include no such condition.

30. Multiple Defendants' workers repeatedly denied Consumer's requests for reimbursement by misquoting and mischaracterizing the contents of the Certificate of Insurance by purporting to cite the "phantom," non-existent condition that appears *nowhere* in the Certificate of Insurance that the healthcare provider must accept Medicare.

31. In repeatedly denying Mr. Sacchi's requests, Defendants' workers referenced the company-wide policy that prohibits any and all reimbursement of this class of claims *despite the contradictory contractual language in the Certificate of Insurance—and in AARP's solicitations of insurance policy sales—that explicitly provide for such payment*.

32. United's ***attorney*** then confirmed the refusal of reimbursement by continuing United's misquoting and mischaracterizing the plain contractual language in the Certificate of Insurance and United continued to refuse to make Consumer whole.

33. All of the claims asserted herein arise out of Companies' common practice and language in their AARP membership and insurance policy sales solicitations and Certificate of Insurance that arise from a common fact pattern as to each member of the Class defined below.

## **JURISDICTION AND VENUE**

34. This Court has jurisdiction over the Defendants in this action because many of their actions and omissions complained of herein occurred in and/or were targeted to cause damages in Monmouth County.

35. Venue is proper in Monmouth County in that many of the acts and omissions complained of, and the resulting damages, occurred in Monmouth County and concern multiple violations of, *inter alia*, the New Jersey Consumer Fraud Act.

36. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. section 1332(d)(2) in that the matter in controversy of all class members' claims together aggregate more than $5,000,000, exclusive of costs and non-breach interest, the number of class members exceeds one hundred, and Consumer resides outside Washington, D.C., Connecticut, and Minnesota. In addition, and alternatively, the amount in controversy will be greater than $75,000.00 for any one, more, or all individual plaintiffs depending on the specific amount of the respective denied insurance claim and attendant damages.

## **THE "DOE DEFENDANTS"**

37. Except as described herein, Plaintiff is ignorant of the true names of Defendants sued as Does 1 through 10, inclusive, and the nature of their wrongful conduct, and therefore sues the Doe Defendants by such fictitious names.

Plaintiff will seek leave of the Court to amend this complaint to allege their true names and capacities when ascertained.

38. At all times herein mentioned, AARP, United, and the Doe Defendants, and each of them, were an agent or joint venturer of each other, and in doing the acts alleged herein, were acting within the scope of such agency. AARP and United had actual and/or constructive knowledge of the acts of each of the other Defendants and AARP, United, and the Doe Defendants ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant and AARP, United, and the Doe Defendants retain and retained the benefits of said wrongful acts.

39. AARP, United, and the Doe Defendants aided and abetted, encouraged and rendered substantial assistance to AARP, United, and the Doe Defendants in committing the wrongful acts alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoing complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing of the Doe Defendants, AARP, and United.

40. At all times herein mentioned, AARP, United, and the Doe Defendants conspired with each other by means of mutual understanding, either expressly or impliedly, among themselves and others in engaging and/or planning to engage

in the activities detailed herein to accomplish the wrongful conduct, wrongful goals, and wrongdoing.

## CLASS ACTION ALLEGATIONS

41. Plaintiff brings this action on behalf of himself and all persons similarly situated pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of the Rule. The Class is defined as follows:

> All individuals who (A) at any time since 2014, were an AARP member and a policyholder of an AARP Medicare Supplement Plan by UnitedHealthcare insurance policy and received one or more denials of reimbursement for the expense of medically necessary healthcare on the purported ground that the subject healthcare provider did not participate in Medicare and/or did not accept Medicare payment and (B) either resided in New Jersey, were present in New Jersey when the AARP membership purchase or renewal and/or United policy purchase or renewal was effected, or received the subject medically necessary healthcare while in New Jersey. Excluded from the Class are: (1) employees of the Defendants, including their officers or directors; (2) Defendants' affiliates, subsidiaries, or co-conspirators; and (3) the Court to which this case is assigned.

42. Plaintiff does not know the exact number of Class members because such information is in the exclusive control of the Defendants. However, Plaintiff believes that due to AARP's and United's self-professed assertion that they sell more Medi-Gap (or "Medicare Supplement") insurance policies than any other insurer and United's apparent use of identical language in its Certificate of Insurance and systematic denial of the subject claims for reimbursement, Class members are sufficiently numerous, most likely many thousands of consumers, and geographically dispersed throughout New Jersey, that joinder of all Class members is impracticable. The information as to the identity of the Class members can be readily determined from records maintained by the Defendants, because all AARP memberships and AARP Medicare Supplement Plan insurance policies were memorialized, written, and recorded in Defendants' paper and electronic records.

43. Plaintiff's claims are typical of, and not antagonistic to, the claims of the other Class members because Plaintiff was injured by Defendants' practices and by asserting his claims, Plaintiff will also advance the claims of all members of the Class who were damaged by the same wrongful conduct of Defendants and their co-conspirators as alleged herein, and the relief sought is common to the Class.

44. The common legal and factual questions which do not vary from Class member to Class member, and which may be determined without reference to individual circumstances

of any Class member, include, but are not limited to, the following:

a. Did Defendants deliberately and systemically refuse reimbursement of claims despite contractual promises and controlling law that mandated reimbursement?

b. Did Defendants deliberately and systemically solicit sales and renewals of AARP memberships and insurance policies while intending to deny reimbursement for claims of medically necessary care despite contractual promises that mandated them?

c. What is the appropriate measure of damages for Defendants' wrongful conduct?

d. Was Defendants' policy deliberate such that punitive damages may be awarded? and

e. Are Plaintiff and the Class Members entitled to the injunctive and equitable relief requested herein to prohibit AARP and United from continuing to fraudulently solicit AARP memberships and sales of the insurance policies and wrongfully deny reimbursement for expenses of medically necessary healthcare?

These common questions and others predominate over questions, if any, that may affect only individual members of the Class.

45. The claims of the representative Plaintiff are typical of the claims of the Class. There are no material

conflicts with any other member of the Class that would make class certification inappropriate. Plaintiff and counsel will fairly and adequately represent the interests of the Class.

46. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome on the courts if individual litigation of numerous cases ensued. By contrast, the pursuit of this action as a class action, with respect to some or all of the issues presented in this Complaint, presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

47. Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, thereby establishing incompatible standards of conduct for the Defendants, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.

48. Injunctive relief is appropriate as to the Class as a whole because Defendants have acted or refused to act on grounds generally applicable to the Class and the existence of identical contract language.

49. Whatever difficulties may exist in the management of the class action will be greatly outweighed by the benefits of the class action procedure, including, but not limited to, providing Class members with a method for the redress of claims that may otherwise not warrant individual litigation: Individual consumers typically lack the resources, ability, and knowledge to legally pursue their respective remedy after United's wrongdoing and the relatively small amounts at issue for many would not warrant an attorney's involvement on an isolated claim.

50. Indeed, even though Mr. Sacchi himself had obtained an attorney and filed an individual action to pursue his claim, United's attorney responded by simply parroting United's mischaracterization of the plain language of the Certificate of Insurance.

51. Accordingly, if a class were not certified, the alternative to a class action would not be multiple individual actions, but rather ***no actions*** and Defendants would all thereby have succeeded in committing——and continuing to commit——its wrongdoing with legal impunity.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION

**(Violation of New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2.2 et seq. ("NJCFA"))**

52. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

53. Defendants violated the NJCFA by, *inter alia*, fraudulently soliciting sales and renewals of AARP memberships and AARP Medicare Supplement Plans from UnitedHealthcare insurance policies that promise to pay for medically necessary healthcare not paid by Medicare while intending to deny countless such claims by citing a phantom, non-existent condition that appears ***nowhere*** in the Certificate of Insurance, i.e., that the healthcare provider must participate in Medicare and/or accept Medicare as payment. And United then denies claims on that legally invalid ground, thereby causing Consumer economic damages, in accordance with its decades-old systematic practice of which AARP has actual and constructive knowledge.

54. AARP also violates the NJCFA by continuing to endorse the policies despite United's, *inter alia*, decades-old misrepresentation of the provisions of the subject Certificate of Insurance by falsely informing consumers that claims are not covered due to a purported condition that, in fact, appears ***nowhere*** in the Certificate of Insurance. This conduct of "misrepresenting pertinent facts" also is specifically prohibited by the New Jersey Unfair Claims Settlement Act, Sec. 17:29B(9)(a), (d) & (n).

55. NJCFA provides for, *inter alia*, treble damages, attorneys' fees, penalties of $10,000.00 for the first violation and $20,000.00 for the second and every subsequent violation, and enhanced damages for violations perpetrated against Senior Citizens and/or persons suffering from a disability, which includes a

$30,000.00 penalty for a scheme perpetrated against such vulnerable consumers.

56. Plaintiff is a Senior Citizen who suffered a cerebral vascular accident in 2011 and has been receiving medical treatment for his "stroke" prior to all the facts detailed herein.

57. All prospective Class Members, by virtue of their Medicare coverage, are either more than 64 years old and/or disabled (aside from a tiny fraction who suffer solely end-stage renal disease and may therefore not be deemed disabled).

58. NJCFA imposes personal liability[3] upon individuals who violate the statute notwithstanding their having purported to contract solely in the corporate entity's name.

59. Plaintiff also seeks injunctive relief against Defendants to prevent AARP and United from perpetrating future fraudulent solicitation of sales and renewals of AARP memberships and AARP Medicare Supplement Plans insurance policies and wrongful refusals to pay claims based on its citation of “phantom,” non-existent conditions in the Certificate of Insurance.

[3] Gennari v. Weichert Co. Realtors, 148 N.J. 582 (1997).

**AS AND FOR A SECOND CAUSE OF ACTION**

**(Breach of Contract and Contractual Covenant of Good Faith and Fair Dealing)**

60. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

61. Defendants breached, and continue to breach, the contractual duty and the contractual covenant of good faith and fair dealing they owed to Plaintiff, which required them to only endorse, solicit, and append their name to insurance policies that, at a minimum, approved claims in accordance with the explicit terms of the subject Certificate of Insurance, which is a contract of adhesion and therefore is construed strictly against its drafters in accordance with the doctrine of *contra proferentem*.

62. Plaintiff has suffered economic damage as a result.

**AS AND FOR A THIRD CAUSE OF ACTION**

**(Fraud)**

63. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

64. Defendants fraudulently solicited sales and renewals of AARP memberships and AARP Medicare Supplement Plan insurance policies while intending to deny claims in contravention of explicit assurance in its advertisements and Certificate of Insurance that promised to pay medically necessary claims in accordance with their decades-old systematic practice.

65. Defendants also fraudulently solicited sales and renewals of membership in AARP by ***requiring AARP membership*** for enrollment in the subject insurance policies.

66. Consumer relied on Defendants' fraudulent promises by purchasing a policy and AARP membership and purchasing annual renewals of the policies and AARP memberships needed to be and remain enrolled in the policies.

67. Defendants denied reimbursement of Consumer's expense for medically necessary care on an invalid ground that appeared ***nowhere*** in the Certificate of Insurance.

68. Plaintiff has suffered economic damage as a result.

## AS AND FOR A FOURTH CAUSE OF ACTION
**(Unjust Enrichment)**

69. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

70. AARP has received, and continues to receive, royalty payments from United in exchange for its participation in the knowingly fraudulent sale and renewals of AARP memberships and AARP Medicare Supplement Plans insurance policies that blatantly fail to cover proper claims in accordance with the Certificate of Insurance.

71. Consumer relied on Defendants' fraudulent promises by purchasing a policy.

72. Defendants denied reimbursement of Consumer's expense for medically necessary care on an invalid ground that appeared ***nowhere*** in the Certificate of Insurance.

73. Plaintiff has suffered economic damage as a result and AARP and United must be ordered to disgorge this ill-gotten money.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

**PRAYER FOR RELIEF**

1. Certification of the proposed Class and notice and claims administration to be paid by Defendants;

2. Statutory damages and penalties;

3. Compensatory, general, incidental, and consequential damages according to proof;

4. Special damages according to proof;

5. Punitive damages to punish Defendants for their willful illegal and deliberate tortious conduct and to deter others who may otherwise engage in similar willful illegal and deliberate conduct;

6. Restitution and disgorgement according to proof;

7. Injunctive relief against Defendants, and each of them to prevent AARP and United from continuing to perpetrate future fraudulent solicitation of AARP memberships and membership renewals, future fraudulent solicitation of United insurance policies and policy

renewals, and future wrongful refusals of claims submitted thereunder;

8. Prejudgment interest at the maximum legal rate;

9. Costs of the proceedings herein;

10. Reasonable attorneys' fees; and

11. All such other and further relief as the Court deems just and proper, the total of which, less interest and costs, will be greater than $5,000,000.00 and may be greater than $75,000.00 for any one, more, or all individual plaintiffs.

Dated: Feb. 22, 2026 Respectfully submitted,

By: /s/__Stephen J. Simoni_
STEPHEN J. SIMONI
StephenSimoniLAW@gmail.com
**SIMONI CONSUMERS
CLASS ACTION LAW OFFICES**
c/o Jardim Meisner Salmon
Sprague & Susser, P.C.
30B Vreeland Road, Ste. 100
Florham Park, NJ 07932
Telephone: (917) 621-5795

*Counsel for Plaintiff and
the Proposed Class*

**DEMAND FOR JURY TRIAL**

Plaintiff on behalf of himself and all others similarly situated hereby requests a jury trial on all claims so triable.

Dated: Feb. 22, 2026 Respectfully submitted,

By: /s/__Stephen J. Simoni_
STEPHEN J. SIMONI
StephenSimoniLAW@gmail.com
**SIMONI CONSUMERS CLASS ACTION LAW OFFICES**
c/o Jardim Meisner Salmon Sprague & Susser, P.C.
30B Vreeland Road, Ste. 100
Florham Park, NJ 07932
Telephone: (917) 621-5795

*Counsel for Plaintiff and the Proposed Class*

# EXHIBIT A

Sacchi - 1


AARP Medicare Supplement Insurance Plans from UnitedHealthcare
Sponsored ·
No referrals needed with a Medicare Supplement insurance plan. That's your kind of Meuicare-related plan.
See any doctor without getting a referral
H
AARP | Medicare Supplement
from UnitedHealthcare
UnitedHealthcare Ins. Co. or UnitedHealthCare Ins. Co. of America or UnitedHealthcare Ins. Co. of NY
0:00
Medicare Program.
AARP endorses the AARP Medicare Supplement Insurance Plans. Insurers of
0:01 / 0:15
AARPMEDICARESUPPLEMENT.COM
Compare Plans and Rates
Shop 2026 Plans Now
Get quote